IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**WILLIAM E. WEBB,**

        **Petitioner,**

**v.**                                                        **Civil Action No. 5:06cv96**
                                                                **(Judge Stamp)**

**MATTHEW B. HAMMIDULLAH,**
**STEVE LABEIR, ALBERTO GONZALEZ,**
**AND HAROLD WATTS, et al.,**

        **Respondent.**

## OPINION/REPORT AND RECOMMENDATION

On February 27, 2006, the *pro se* petitioner filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 in the United States District Court for the District of South Carolina. On March 20, 2006, the petitioner supplemented his petition with a copy of the Amended Judgment and Commitment Order entered in United States v. Webb, 1:99cr373-1 (M.D.N.C. Apr. 26, 2001). On June 20, 2006, the petitioner was granted permission to proceed as pauper by the South Carolina Court.

Also on June 20, 2006, the Honorable Bristow Marchant, United States Magistrate Judge for the District of South Carolina, conducted a preliminary review of the petition and determined that even construing the petitioner's claims under the less stringent standard afforded *pro se* litigants, the petition was subject to summary dismissal for the failure to allege facts which set forth a cognizable claim in federal court. Magistrate Judge Marchant's Report and Recommendation was adopted by the Honorable Henry F. Floyd, United States District Judge for the District of South Carolina, on July 11, 2006. On July 12, 2006, the District of South Carolina received the

petitioner's objections to the Report and Recommendation. On July 14, 2006, Judge Floyd *sua sponte* vacated his Order adopting the Report and Recommendation. Additionally, by separate order, Judge Floyd recognized that since the initiation of the case, the petitioner had been transferred outside the jurisdiction of the District of South Carolina. Accordingly, because the petitioner had been transferred to the Hazelton Penitentiary in Bruceton Mills, West Virginia, the petitioner's case was transferred to this Court for all further proceedings.

On October 19, 2006, not realizing that the District of South Carolina had already granted the petitioner *in forma pauperis* ("IFP") status, this Court directed the petitioner to pay the required $5 filing fee. On October 25, 2006, the petitioner filed an Objection and Motion for Reconsideration of that Order. In support of his motion, the petitioner asserts that his IFP motion was ruled on by the District of South Carolina prior to the case being transferred to this Court. Moreover, in granting him IFP status, the petitioner asserts that the District of South Carolina had not required that he pay the $5 filing fee. Therefore, the petitioner objected to this Court's Order requiring him to pay the fee and requested reconsideration of such Order. However, notwithstanding his objection, on December 4, 2006, the petitioner paid the $5 filing fee in compliance with the Order of this Court.

This case is now before the undersigned on the petitioner's objection and motion for reconsideration and for a preliminary review and report and recommendation pursuant to LR PL P 83.09.

## I. Objection and Motion for Reconsideration

Inasmuch as the District of South Carolina granted the petitioner IFP status prior to transfer to this Court, the petitioner's motion for reconsideration of this Court's Order directing him to pay the required $5 filing fee (dckt. 28) is **GRANTED**. The **Clerk** is directed to refund the petitioner

2

the $5 filing fee paid to this Court on December 4, 2006. Because the undersigned has reconsidered the Order directing the petitioner to pay the $5 filing fee, his objection to said Order is **MOOT**.

## II.  Petitioner's Conviction and Sentence

The petitioner was convicted of drug and firearm charges in the United States District Court for the Middle District of North Carolina for which he received a total sentence of 355 months imprisonment. See United States v. Webb, 1:99cr373-1 (M.D.N.C. Apr. 26, 2001). The sentencing court also imposed an assessment of $300, due immediately, and a fine of $1000, to be paid during the petitioner's term of imprisonment.[1]  With regard to the $1000 fine, the Court gave the following special instruction, "[t]he $1000.00 fine *may* be paid through the Inmate Financial Responsibility Program."  See dckt. 5 at 6 (emphasis added).

## III.  Claims of the Petition

In the petition, the petitioner asserts that on or about October 7, 2004, the respondent established a "fixed $25 quarterly payment obligation upon Petitioner to pay his court ordered fines and assessment fees." Petition (dckt. 1) at 5. The petitioner asserts that he agreed to such terms under threat of sanctions, but that on or about July 2, 2005, Bureau staff increased his quarterly payment to $50. Because the petitioner refused to pay the $50 quarterly payment, the Bureau of Prisons ("BOP") placed him on refusal status and sanctioned him without a hearing. Thereafter, on October 18, 2005, the petitioner made a $25 quarterly payment directly to the Clerk of Court for the Middle District of North Carolina. After making such payment, the petitioner advised Bureau staff of his payment and requested that he be taken off refusal status. However, staff refused to take the

---

[1] The Judgment and Commitment Order states that "[u]nless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment." Dckt. 5 at 6.

petitioner off refusal status because it determined that the $25 payment to the Court was merely the petitioner's attempt to circumvent BOP policy.

The petitioner asserts that he has exhausted his administrative remedies with regard to the issues raised in the petition. In its final denial of the petitioner's administrative remedies, the Central Office stated:

> Program Statement 5380.07, Financial Responsibility Program, Inmate, establishes a voluntary program through which inmates work with staff to develop a plan to meet their financial obligations, including court ordered assessments, costs, and restitution . . . Through the IFRP, the BOP is giving you an opportunity to demonstrate financial responsibility by addressing your financial obligations as ordered by the court. P.S. 5380.07 requires the minimum payment for non-UNICOR and UNICOR grade 5 inmates to be $25 per quarter . . . Policy stipulates that an inmate's community resources may warrant increasing the minimum payment amount. Therefore, staff were well within their discretion to ask you to increase your IFRP contribution from $25.00 quarterly to $50.00 quarterly, after your receipt of $925.00 in a six-month period. You refused to pay $50.00 quarterly toward your financial obligations, therefore, you were placed on IFRP REFUSE status.

Petition (dckt. 1), Ex. A at 3.

Based on this factual background, the petitioner states the following four grounds for habeas relief:

(1) Statutory duty imposed upon district court to fix term of fine must be read as exclusive, and BOP officials usurp this core judicial function by establishing and timing the petitioner's payments of his court imposed fines or restitution.

(2) The due process clause protects the petitioner against any delinquency adjudication by BOP officials, of alleged failure to pay court ordered fines and fees, using a preponderance of the evidence standard, especially when the finding of guilt results in the taking of his privileges, et al sanctions.

(3) The petitioner acted properly and in accordance to law, by making a $25 payment on

court imposed fines and fees directly to court Clerk, and policy of BOP officials that implies this act is an attempt to circumvent policy is contrary to statutory law and clearly erroneous.

    (4) The petitioner's sentencing court erroneously delegated its authority to set the amount and timing of the petitioner's fines and assessment of fees payments to the Bureau of Prisons and/or the probation officer, without retaining ultimate authority over such decisions.

## III. Analysis

The IFRP was enacted to assist inmates "to meet his or her legitimate financial obligations"[2] and applies to "all inmates in federal facilities." 28 C.F.R. § 545.10. "The IFRP program serves valid penological interests and is fully consistent with the Bureau of Prisons' authorization, under the direction of the Attorney General, to provide for rehabilitation and reformation." Johnpoll v. Thornburgh, 898 F. 2d 849, 851 (2d Cir. 1990). Further, while the petitioner's failure to comply with the IFRP can have negative consequences on the inmate see 28 C.F.R. § 545.11(d), compelled participation in the program is neither punitive in nature nor violates due process because it is reasonably related to the legitimate government objective of rehabilitation. Johnpoll, 898 F. 3d at 851. The IFRP has been "uniformly upheld against constitutional attack." McGhee v. Clark, 166 F. 3d 884, 886 (7th Cir. 1999).

The Fourth Circuit Court of Appeals has held that "a district court may not delegate its authority to set the amount and timing of fine payments to the Bureau of Prisons or the probation officer." United States v. Miller, 77 F.3d 71, 78 (4th Cir. 1996). In Miller, the district court had ordered Miller to "make payments toward the $3,000 fine and the fifty-dollar restitution at such times and in such amounts as the Bureau of Prisons and/or the Probation Office may direct." The

---

[2] Fines are inmate financial obligations. 28 C.F.R. § 545.11(a)(3).

Fourth Circuit determined that the district court had improperly delegated its authority to the BOP and vacated the portion of Miller's sentence regarding the fine and restitution.

In grounds one and four, the petitioner asserts that the sentencing court has a statutory duty to set the amount and timing of his assessment and fine. See 18 U.S.C. § 3572(d)(1) ("[a] person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately, unless, in the interests of justice, the court provides for payment on a date certain of in installments"). The petitioner further argues that the sentencing court improperly delegated such authority to the BOP and failed to maintain ultimate authority over the amount and timing of his fine and assessment.

Upon a review of the petitioner's Amended Judgment and Commitment order, it is clear that the sentencing court ordered that the petitioner pay a $300 assessment and a $1000 fine. Moreover, the sentencing court clearly ordered that the $300 assessment be paid in full immediately and that the $1000 fine be paid during the petitioner's term of imprisonment. Therefore, the sentencing court set the amount and timing of the petitioner's criminal fines and did not improperly delegate that responsibility to the BOP. Moreover, to the extent that the sentencing court stated that the petitioner may make payments of his fine through the IFRP, the Court did not require such participation, nor fail to maintain ultimate authority of such fine, it merely acknowledged that the fine could be paid in such a manner. Accordingly, grounds one and four of the instant petition are without merit.

As to ground two, the petitioner asserts that his due process rights were violated when he was sanctioned for not paying the amount set by the BOP under the IFRP. However, as previously noted, compelled participation in the IFRP is neither punitive in nature nor violates due process because it is reasonably related to the legitimate government objective of rehabilitation. Johnpoll,

898 F. 3d at 851. In fact, in addition to Johnpoll, the Circuit Courts to address this issue have uniformly upheld the IFRP against constitutional attack on due process grounds. See Weinberger v. United States, 268 F.3d 346, 360 (6th Cir. 2001); McGhee v. Clark, supra; James v. Quinlan, 866 F.2d 627, 629 (3rd Cir. 1989); Dorman v. Thornburgh, 955 F.2d 57, 58-59 (D.C. Cir. 1992). Accordingly, ground two is also without merit.

As to ground three, the petitioner asserts he acted properly and in accordance to law by making a payment directly to the sentencing court. There is no doubt that the petitioner may make payments toward his fines and fees directly to the sentencing court. However, such payment has no effect on the petitioner's participation in the IFRP. The BOP determined that the petitioner's IFRP payment should be $50 quarterly. The petitioner failed to make that payment through the IFRP. Instead, the petitioner attempted to circumvent the objectives of the program by making a $25 payment directly to the sentencing court. The petitioner chose not to utilize the IFRP and therefore voluntarily lost any advantage he may have had through participation in the program. His subsequent payment of $25 does not negate his refusal to participate in the program and the BOP properly placed him on refusal status. Accordingly, ground four is without merit.

Finally, the undersigned notes that in his objections to the Report and Recommendation of the Magistrate Judge in South Carolina, petitioner raises an additional claim pertaining to the collection of a debt under the Federal Debt Collection Procedure Act of 1990 ("FDCA"). See dckt. 11. In that document, the petitioner asserts that the BOP may not order installment payments pursuant to P.S. 5380.08 (IFRP) without an order from a court and only after a hearing as to the petitioner's ability to pay the imposed fees and fines.

However, as noted by the Administrator of Inmate Appeals in response to the petitioner's

central office administrative remedy, P.S. 5380.08 (IFRP), was developed in response to laws which require that all law enforcement agencies make a diligent effort to collect court ordered financial obligations. These laws are specifically recognized by the Bureau in P.S. 5380.08. See P.S. 5380.08, page 1 ("The Victim and Witness Protection Act of 1982, the Victims of Crime Act of 1984, the Comprehensive Crime Control Act of 1984, and the Federal Debt Collections Procedure Act of 1990 require a diligent effort on the part of all law enforcement agencies to collect court-ordered financial obligations."). Moreover, although the FDCA generally provides the "exclusive civil procedure for the United States -- (1) to recover a judgment or debt . . . ," the act "does not curtail or limit the right of the United States under any other Federal law or any State law . . . (2) to collect any fine, penalty, assessment, restitution, or forfeiture arising in a criminal case." As noted by the BOP in its program statement, as a law enforcement agency, it is required, by Federal law, namely, the Victim and Witness Protection Act of 1982, the Victims of Crime Act of 1984 and the Comprehensive Crime Control Act of 1984, to collect court ordered financial obligations. Thus, the BOP's ability to collect the petitioner's court ordered financial obligations under the IFRP is not limited solely to the terms of the FDCA as the petitioner suggests. Accordingly, the petitioner's objection fails to save his petition from summary dismissal.

**IV. Recommendation**

For the foregoing reasons, the undersigned recommends the petitioner's § 2241 petition be **DENIED** and **DISMISSED with prejudice**.

Within ten (10) days after being served with a copy of this Report and Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such

objections shall also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Opinion/Report and Recommendation to the *pro se* petitioner.

DATED: May 17, 2007.

/s *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE